Tracy L. JONES, Plaintiff,

v.

CONTINENTAL CASUALTY
CO., Defendant.

No. 97–2624–JWL.

United States District Court,
D. Kansas.

Jan. 15, 1999.

William F. Zimmerman, Kansas City, KS,
for plaintiff.

Carl A. Gallagher, Paul K. Thoma, McAnany, Van Cleave & Phillips, P.A., Kansas City,
KS, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Tracy L. Jones ("Jones") brings this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), claiming long-term disability benefits allegedly due her under defendant Continental Casualty Company's ("Continental") disability insurance plan. A trial to the court was held in this matter on January 5, 1999. This Memorandum and Order constitutes the court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a). After careful consideration of all of the evidence, as well as the arguments of counsel, the court finds in favor of defendant Continental.

### I. Facts

The insurance policy at issue here was purchased by Black & Veatch, for whom plaintiff was employed as a technical drafter from April 3, 1996 to October 11, 1996. The policy is both administered and underwritten by defendant Continental.

Defendant's plan provided for long-term disability coverage. The plan defines the term "disability" as "Total Disability, Partial Disability and Rehabilitative Employment." The policy further defines each disability classification as follows:

"Partial Disability" means that the Insured Employee, because of Injury or Sickness, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) gainfully employed in his regular occupation on a partial and/or part-time basis.

"Rehabilitative Employment" means that the Insured Employee, because of Injury or Sickness, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) gainfully employed in any occupation, other than his regular occupation, on a full-time or part-time basis for which he is or becomes qualified by education, training or experience.

"Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

The policy also provides that "[w]ritten proof of loss must be furnished to [Continental] within 90 days" and that monthly disability benefits will be paid only after Continental "receive[s] due written proof of loss."

Plaintiff's occupational duties required her to sit at a computer terminal for one to two hours at a time, to work with other employees, and to move about the building to collect drawings, plots, and other materials. Plaintiff's work activities involved constant twisting between her computer monitor and reference material placed on a table located next to her computer terminal. Plaintiff's physical duties were classified as "sedentary."

On June 4, 1996, plaintiff visited Dr. Gracheck, D.O., complaining of lower back and left hip pain. An x-ray of plaintiff's lumbosa-cral spine and hips "fail[ed] to reveal any significant osseous pathology other than slight asymmetry of the articulation of L5–S1." Dr. Gracheck diagnosed plaintiff as suffering from chronic lumbosacral dysfunction and trochanteric bursitis of the left hip. Exercise for plaintiff's hip and a pain reliever were prescribed at that time.

On June 18, 1996, plaintiff was again evaluated by Dr. Gracheck, complaining of joint, hip, and back pains. At that time, Dr. Gracheck assessed plaintiff's condition as arthritis. On July 25, 1996, Dr. Gracheck diagnosed plaintiff as suffering from fibromyalgia.[1] Plaintiff continued working for Black & Veatch until October 11, 1996.

On October 25, 1996 plaintiff was evaluated by Dr. Yennie at the Yennie Chiropractic Clinic. Additional x-rays, the results of which are disputed by the parties, were taken at that time. Dr. Yennie prescribed a treatment plan consisting of twice weekly treatments over a ten-week period, subject to further evaluation.

On December 12, 1996, Dr. Gracheck completed a document entitled "Physician's Statement," in which he indicated his diagnosis of plaintiff's condition as fibromyalgia. Elsewhere in that document, Dr. Gracheck listed plaintiff's specific physical limitations as: lifting limited to less than ten pounds, standing limited to twenty to thirty minutes, and stooping or bending limited to thirty minutes.

On January, 23, 1997, plaintiff visited Perri Ginder, a medical doctor, for a rheumatology examination. Dr. Ginder affirmed the previous diagnosis of fibromyalgia, and prescribed exercises and medication. Dr. Ginder noted that plaintiff claimed that she was unable to complete eight hours of work within an eight-hour workday, as required by her employment with Black and Veatch, but that "she can easily accomplish 8 hours of work within a 24–hour period."

On January 2, 1997, plaintiff filed a claim with Continental, seeking long-term disability benefits under the plan. On February 29,

---

1. According to the informational literature submitted by plaintiff to defendant, "[f]ibromyalgia syndrome is a common form of generalized muscular pain and fatigue." Arthritis Foundation Fibromyalgia Informational Booklet at 1.

1997, Continental notified plaintiff that it had evaluated her claim, and that the medical evidence she had submitted was insufficient to support eligibility for long-term benefits. Continental informed plaintiff that she was entitled to furnish additional medical information previously unconsidered in the determination of her eligibility status, and of her right under ERISA to appeal the decision.

On March 17, 1997, plaintiff notified defendant of her intention to appeal the administrator's denial of disability benefits. In this correspondence, plaintiff included an informational brochure describing fibromyalgia and its symptoms, along with a letter from Dr. Gracheck dated March 4, 1997 that indicated his diagnosis of her condition as progressive fibromyalgia. Dr. Gracheck explained that "[g]iven the fact that she is a computer operator, and this is her only known training and occupation, she is, in my medical opinion, totally disabled from her current occupation."

On April 2, 1997, Continental informed plaintiff that it had considered her previous letter and its accompanying documents, and that Dr. Gracheck's letter failed to provide "any objective findings to substantiate an impairment" that would prevent plaintiff from remaining employed as a technical drafter. The letter also advised plaintiff that Continental had received additional medical information from Dr. Ginder, and that although Dr. Ginder's conclusions were not considered previously, Continental viewed Dr. Ginder's findings as indicating that plaintiff's condition was insufficiently severe to warrant the payment of disability benefits. The letter further stated that her claim would be forwarded to the Appeals Committee.

On May 2, 1997, Dr. Gracheck submitted to Continental a letter identical to his previous letter of March 4, 1997. The Appeals Committee reviewed plaintiff's claim, and on June 10, 1997, notified plaintiff that the original denial of benefits was appropriate based on plaintiff's medical records.

On November 3, 1997, Jones initiated suit in the District Court of Johnson County, Kansas, alleging breach of contract and seeking declaratory judgment with respect to plaintiff's rights under the long-term disability insurance policy. Defendant removed the action to this court pursuant to 28 U.S.C. § 1441(b). Thereafter, defendant filed a motion for summary judgment, which was denied by this court.

## II. Standard of Review

On December 4, 1998, this court ruled that the terms of the plan failed to vest sufficient discretion in the plan administrator, such that defendant's denial of plaintiff's claim was subject to de novo review. The court thus evaluates plaintiff's claim in light of the de novo standard.[2]

## III. Discussion and Conclusions of Law

Neither party disputes that the burden of proof rests with plaintiff to establish her entitlement to long-term disability benefits under defendant's plan. *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192, 1205 (10th Cir.1992) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred....")

**2.** At trial, without objection from plaintiff, defendant urged this court to consider evidence of Ms. Jones' employment as a design consultant for Nellcor Puritan Bennett between February 1997 and June 1997. This information was unknown to defendant during its consideration of Ms. Jones' disability claim, and is, therefore, not included as part of the administrative record. The defendant argues that because the definition of "total disability" specifically requires plaintiff's inability to engage in "gainful employment," the consideration of any evidence implicating Ms. Jones' ability to work is indeed necessary for adequate review of the benefits decision.

The court does not decide whether it should, under a de novo standard of review, consider this evidence. First, the court concludes below that plaintiff failed in her burden of proof to persuade the court that she was continuously unable to perform the substantial and material duties of her regular occupation and, thus, she was not "disabled" and therefore not entitled to benefits irrespective of whether or not she was "gainfully employed." Second, even if the court were to reach the issue, it would not be dispositive of whether plaintiff is entitled to long term benefits under the policy, but, rather, it would only give guidance as to which level of benefits, partial, rehabilitative or total, she would receive if she otherwise sustained her burden of proof.

Following a thorough review of the evidence presented at trial, the court concludes that plaintiff failed to prove that she is totally disabled within the meaning of defendant's plan.

## A. Substantial and Material Duties

To qualify for long term disability benefits under defendant's policy, an applicant must, as a result of injury or illness, be "continuously unable to perform the substantial and material duties of his regular occupation." The court first notes that plaintiff seems to have confused the inquiry by assuming that this definition is synonymous with being unable to perform her current job with Black & Veatch. On the contrary, no language in defendant's policy suggests that it is intended to secure plaintiff's position with Black & Veatch, or that its coverage is triggered in the event that plaintiff is disabled from her employment with Black & Veatch. Instead, defendant's policy plainly requires a claimant to be disabled from performing the duties of his or her "regular occupation." To the extent that plaintiff's contention is that the term "regular occupation" is synonymous with "employment as a technical drafter with Black & Veatch," the evidence does not so demonstrate.

■ Even if, on the other hand, plaintiff's argument were that the term "regular occupation" does not necessarily implicate her particular job with Black & Veatch, but that the Black & Veatch position is representative of the entire technical drafting profession, plaintiff has failed to carry her burden in this respect as well. The court finds that plaintiff has failed to establish what the duties of a technical drafter entail, and, more importantly, which duties of a technical drafter plaintiff is physically unable to perform. Indeed, in light of plaintiff's own admission to Dr. Ginder that she is "easily [able to] accomplish eight hours of work within a twenty-four hour period," the only specific duty plaintiff is apparently unable to perform is the completion of eight hours of work within an eight-hour workday. Plaintiff has failed to offer any evidence to indicate that the "substantial and material duties" of one engaged in plaintiff's occupation necessarily include the ability to perform eight hours of work in an eight-hour time period, however.

Moreover, with the exception of plaintiff's assertion to Dr. Ginder that she is unable to complete eight hours of work in eight hours "as is demanded by her place of employment," plaintiff has failed to offer any evidence to suggest that her employment with Black & Veatch was contingent upon her ability to work pursuant to a traditional, eight-hour workday. Thus, not only did plaintiff fail to prove that an eight-hour workday is one of the material duties of her *current* position, she failed to present evidence that an eight-hour workday is universally required of those engaged in the technical drafting occupation. Furthermore, plaintiff's admission to Dr. Ginder that she was "able to get some work from other sources to do at home" nullifies any contention that the regular occupation of technical drafting requires eight-hour workdays. Accordingly, in the absence of any evidence to support plaintiff's contention that the "regular occupation" of a technical drafter contemplates an eight-hour workday, the court is unpersuaded that plaintiff's inability to complete eight hours of work per day renders her continuously unable to perform the substantial and material duties of her regular occupation.

## B. Evidence of "Total Disability"

■ Even assuming that plaintiff had sufficiently established that the occupation of a technical drafter requires the ability to complete eight-hour workdays, the court finds plaintiff's medical evidence of her alleged total disability insufficient to support her disability benefits claim. Indeed, the only evidence offered to prove plaintiff's "totally disabled" status is limited to Dr. Gracheck's letters dated March 4, 1997 and April 17, 1997, in which Dr. Gracheck states that Ms. Jones is "totally disabled from her current occupation." The court views Dr. Gracheck's assessment of Ms. Jones' condition with skepticism, however, and finds it insufficient to support a finding that she was totally disabled by her medical condition.

As a preliminary matter, Ms. Jones' medical records bear no indication of any medical findings or notations to indicate that Dr. Gracheck believed Ms. Jones' medical condi-

tion rendered her totally disabled. Instead, Ms. Jones' patient history merely reflects an initial diagnosis of arthritis on June 18, 1996, followed by a diagnosis of fibromyalgia one month later. Although the court is somewhat troubled by the fact that Ms. Jones' medical records contain no explanation for the recharacterization of Ms. Jones' condition, it discounts Dr. Gracheck's conclusory assessment of total disability primarily because it is inconsistent with the relatively minor limitations Dr. Gracheck had previously placed on Ms. Jones' physical activity. Specifically, the court finds tenuous any relation between Dr. Gracheck's opinion that Ms. Jones was totally disabled and his previous recommendations that she limit the amount of weight lifted and time spent stooping, standing and bending. Without any evidence to support this drastic leap from minor physical restrictions to a diagnosis of total disability, the evidentiary value of Dr. Gracheck's ultimate conclusion is diminished.

Furthermore, the evidence presented fails to establish that Dr. Gracheck was aware of the nature or extent of the duties demanded by Ms. Jones' occupation, much less how her medical condition impacted her ability to carry out those tasks. Thus, in the absence of a correlation between Dr. Gracheck's conclusory determination that Ms. Jones was totally disabled and an explanation for this drastic diagnosis or an indication that he understood the nature of the occupation from which he concluded she was totally disabled, the court accords little weight to Dr. Gracheck's assessment.[3]

In sum, plaintiff has offered insufficient evidence to substantiate her claim that she is unable to perform the material duties of her regular occupation. Accordingly, in light of the evidence presented at trial, the court concludes that plaintiff is not entitled to long term disability benefits under the plan.

IT IS THEREFORE ORDERED BY THE COURT THAT judgment is entered in favor of defendant on plaintiff's ERISA claim.

---

**3.** The court does not, by its decision, intend to suggest that a claimant is required to provide "objective" medical evidence such as x-rays or blood tests to support a claim for total disability benefits. Indeed, there are certain diseases whose symptoms do not manifest themselves in the form of measurable, recordable, objective data. Instead, the court merely finds, based on the record before it, that plaintiff has failed to establish that her medical condition prevented her from executing her duties as a technical drafter.